UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TINA ROSE,

       Plaintiff,

       v.

CITY OF WEST FRANKFORT,
TIMOTHY C. ARVIEW, and
THAD SNELL,

       Defendants.

Case No. 25-cv-00845-JPG

## MEMORANDUM AND ORDER

This case is before the Court on Defendants City of West Frankfort ("the City"), Timothy Arview ("Arview"), and Thad Snell ("Snell")'s Motion to Dismiss (Doc. 29). Defendants ask the Court to dismiss the entirety of Plaintiff Tina Rose's amended complaint for failure to state a claim. Plaintiff filed a response (Doc. 35).

## I.    BACKGROUND

A detailed recitation of the facts giving rise to this litigation were set out in the Court's Memorandum and Order entered October 22, 2025 (Doc. 54). The Court will give only a short summary here. This case started as a property dispute between Plaintiff and two neighboring landowners, Robert Stanley ("Stanley") and Randy Trone ("Trone"). Plaintiff believes that three surrounding properties violate several building and zoning codes. Beginning in 2023, Plaintiff started to complain about the code violations to city officials. She alleges that, instead of acting on her complaints, city officials initiated a pattern of harassment and discriminatory conduct against her. As a result of this alleged conduct, Plaintiff has filed multiple lawsuits against the city and its officials.

In this case, Plaintiff filed an initial complaint on May 2, 2025. She then filed an

amended complaint on May 30, 2025. Both her complaint and amended complaint were screened pursuant to 28 U.S.C. § 1915(e)(2). Eleven claims survived screening and are currently pending before the Court: (1) a claim under 42 U.S.C. § 1983 for First Amendment retaliation; (2) a claim under Title II of the American with Disabilities Act; (3) a claim under § 504 of the Rehabilitation Act; (4) a claim under 42 U.S.C. § 1983 for violation of Fourteenth Amendment due process rights; (5) a claim under 42 U.S.C. § 1983 for violation of Fourteenth Amendment equal protection rights; (6) a claim under 42 U.S.C. § 1983 for civil conspiracy to deprive her of First and Fourteenth Amendment rights; (7) a claim for intentional infliction of emotional distress; (8) a claim for malicious exploitation of a disabled adult; (9) a claim for abuse of process; (10) a claim for public nuisance; and (16) a claim for violation of the Illinois Hate Crime Act. Two claims—Counts 2 and 3—are against the City only. The remaining nine claims are against all three of the defendants.

On July 16, 2025, Defendants filed a motion to stay, or in the alternative, motion to dismiss. In its October 22, 2025, order, the Court addressed Defendants' arguments to stay the litigation. It determined that *res judicata* did not apply but abstained from exercising jurisdiction under the *Colorado River* doctrine. It stayed the case pending resolution of two parallel proceedings in the Franklin County Circuit Court. On January 29, 2026, the Court lifted the stay. As a result, the Court must address Defendants' arguments for dismissal of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   **LEGAL STANDARD**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v.*

2

*Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

## III.   ANALYSIS

### A.  Section 1983 Claims:

Plaintiff attempts to bring § 1983 claims against all three of the defendants. To state a § 1983 claim against an individual, a plaintiff must allege that the defendant deprived her of rights secured by the Constitution or laws of the United States and was acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1009 (7th Cir. 2000). "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation. The

3

plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal citation and quotations marks omitted).

A municipality may not be held vicariously liable for the actions of its employees under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). It may be liable, however, for its own actions as a municipality. *Id.* at 690–92. A municipal action occurs where (1) the municipality had an express policy calling for a constitutional violation, (2) the municipality had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law, or (3) if a person with final policymaking authority for the municipality caused the constitutional violation. *Id.* at 694. And the policy, custom, or decision must be the moving force behind the constitutional violation. *Id.*

The Court finds that Plaintiff fails to state a claim under § 1983 against the City. Her amended complaint does not allege a single policy, custom, or decision of the City that was a moving force behind any constitutional deprivation. Accordingly, the Court will dismiss her § 1983 claims against the City without prejudice. The analysis below will focus exclusively on Plaintiff's § 1983 claims against Arview and Snell.

     i. Count 1 – First Amendment Retaliation:

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. The Due Process Clause of the Fourteenth Amendment makes the First Amendment guarantees applicable to the states. *Gitlow*

4

*v. New York*, 268 U.S. 652, 666 (1925); *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 707 (7th Cir. 2003). To state a claim for retaliation, a plaintiff must allege that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). A complaint states a claim for retaliation when it sets forth "a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); *Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir. 1987).

The Court finds that Plaintiff has plausibly stated a claim for retaliation against Arview and Snell. First, she alleges that she engaged in protected activity by speaking at city council meetings, submitting complaints about dangerous property conditions, and petitioning the government for relief. Further, she alleges that she made public complaints regarding the city council's failure to address the neighboring properties. These allegations are sufficient to show that Plaintiff engaged in protected speech. *See, e.g.*, *Brewer v. Town of Eagle*, 663 F. Supp. 3d 909, 928 (E.D. Wis. 2023) ("It is well established that the right to criticize public officials is at the heart of the First Amendment.").

Second, she alleges that she has suffered a deprivation likely to deter future First Amendment activity. The amended complaint alleges that Arview attempted a false arrest to prevent her from attending the zoning board meeting, told city workers and zoning board members to refuse to speak to her, screamed "whistleblower" at her when she attempted to speak to the zoning board, and filed a fraudulent order of protection against her. In addition, it alleges

5

that Snell refused to address the neighboring properties, threatened to demolish her home, and indicated that he would find a way to give Stanley her property so that he could bring his into compliance with the building and zoning codes. The Court believes that these retaliatory acts are likely to deter an ordinary person from continuing to engage in protected speech.

In reaching this conclusion, it rejects Defendants' argument that Plaintiff cannot establish this element because her own First Amendment activity was not deterred. To determine whether a deprivation is likely to deter future First Amendment activity, the Court applies an objective test. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). It asks, "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Id.* Since the standard is objective, Plaintiff's "persistence does not undermine [her] claim." *Id.* Residents of the City are unlikely to petition the government for relief if they believe it will result in threats to demolish their property and attempts to arrest them or otherwise harm their reputation. That is sufficient to show that Arview and Snell's acts are likely to deter future First Amendment activity.

Third, she has established a timeline to justify an inference of causation. Plaintiff alleges that Snell's threat to demolish her home occurred while she was addressing the city council regarding its contribution to a violent home invasion that occurred against her. She also contends that Arview filed a false police report against her to prevent her from attending the zoning board meeting. Plaintiff alleges that, after the false arrest did not work, Arview yelled "whistleblower" at her multiple times while she attempted to address the zoning board. She claims that, following the zoning board meeting, Arview filed a falsified order of protection against her. These facts, taken as true, plausibly allege that her speech was a motivating factor in Arview and Snell's

decision to take retaliatory action. The Court finds that Plaintiff has sufficiently pleaded a retaliation claim against Arview and Snell. As such, it will allow this claim to proceed.

ii.   Count 4 – Fourteenth Amendment Due Process:

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. § 1. This clause encompasses three types of protection. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The first type consists of a claim based on a violation of a specific provision listed in the Bill of Rights. *Id.* The second type of protection, referred to as substantive due process, bars certain arbitrary, wrongful government action. *Id.* In both situations, a constitutional violation is complete at the time wrongful action is taken. *Id.* In addition, the Due Process Clause contains a third guarantee, the guarantee of fair procedures. *Id.* Under this type of claim, the constitutional violation does not occur when the deprivation occurs, but rather only if the state fails to provide due process. *Id.* at 125–26. Thus, an inquiry into the adequacy of the process provided by the state is necessary to determine whether a constitutional violation occurred. *Id.* at 126. Plaintiff alleges that Defendants deprived her of protected property interests without due process of law by threatening to demolish her home and revoking her fence permit. She believes that these actions violate her substantive and procedural due process rights. Plaintiff does not plead specific factual allegations tying either Arview or Snell to the permit revocation. As such, her due process claim is limited to the threats of demolition.

The Court finds that the threat of demolition does not violate the Due Process Clause. Substantive due process claims aim to protect the individual against arbitrary government action by "the exercise of power without any reasonable justification in the service of a legitimate

governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The substantive due process guarantee was intended not simply to protect from harm by government officials but to protect from government officials' abusing power or using it as an instrument of oppression. *See id.* at 848–49. Therefore, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id*. at 846. (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). The level of abuse cognizable in a substantive due process claim is government conduct that "shocks the conscience." *Id.* "Under this standard, abuse that is merely tortious or even 'abhorrent' does not offend substantive due process." *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 552 (7th Cir. 2014); *see also Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("[E]very official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation.").

The threat of demolition does not meet the "shock-the conscience threshold." *Viehweg*, 559 F. App'x at 552; *see Robbin v. City of Berwyn*, 108 F.4th 586, 592 (7th Cir. 2024) (finding that allegations of verbal harassment based on a city official's shouting of racial epithets at the plaintiff and the city refusing to take immediate action fall "short of the grievous conduct necessary to support a substantive due process claim"); *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (stating that allegations of harassment in the form of twenty-four bogus parking tickets did not suggest a deprivation that "shocks the conscience"); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) (explaining that city attorney's threat to arrest the plaintiff for violating a municipal ordinance was "a far cry from the type of conduct recognized as conscience-shocking"). In addition, it does not establish a procedural due process claim. "A plaintiff cannot be deprived of property without due process of law before that plaintiff

8

is deprived of property." *Tucker v. City of Chicago*, 907 F.3d 487, 492 (7th Cir. 2018); *see also Lawshe v. Simpson*, 16 F.3d 1475, 1478–80 (7th Cir. 1994) (stating that a due process claim accrues upon actual deprivation not notice of threatened deprivation). A mere threat of demolition is not a deprivation of property. As such, Plaintiff has not been deprived of property without due process of law. Since the Court finds that Plaintiff fails to state a claim under the Due Process Clause, it will dismiss this claim without prejudice.

iii.   Count 5 – Fourteenth Amendment Equal Protection:

The Equal Protection Clause of the Fourteenth Amendment forbids any state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Essentially, the clause guarantees "a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322 (1980). To state an equal protection claim, a plaintiff must allege that a state actor has purposefully treated him differently from persons not in the protected group of the plaintiff. *See Washington v. Davis*, 426 U.S. 229, 239–42 (1976); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Plaintiff alleges that Defendants violated her equal protection rights by selectively enforcing codes and targeting her because of her disability and protected speech. Her response brief indicates that she also intends to bring a "class-of-one" claim.

Plaintiff fails to state an equal protection claim based on her protected speech. This claim is merely a repackaging of her First Amendment retaliation claim and is not cognizable under the Equal Protection Clause. *See Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (finding that "the right to be free from retaliation may be vindicated under the First Amendment

or Title VII, but not the equal protection clause"); *Anthony v. O'Fallon Twp. High Sch. Dist. 203 Bd. of Educ.*, 712 F. Supp. 3d 1109, 1125–26 (S.D. Ill. 2024) (determining that the plaintiff "can plead a retaliation claim under . . . the First Amendment . . . but not under the Fourteenth Amendment's Equal Protection Clause, which does not create a *separate* cause of action for retaliation").

She also fails to state an equal protection claim based on her disability. To state an equal protection claim based on disability, "a plaintiff must allege that the defendant '(1) intentionally treated [plaintiff] differently from others similarly situated; (2) this difference in treatment was caused by [plaintiff's] membership in the class to which he belongs; and (3) this different treatment was not rationally related to a legitimate state interest.'" *Bozzi v. Cook Cnty. Sheriff's Off.*, No. 22 CV 03238, 2024 WL 3226576, at *12 (N.D. Ill. June 28, 2024). Plaintiff's claim is deficient for three reasons. First, she fails to plausibly allege that she is a member of a protected class. Her conclusory allegation that she is disabled is not sufficient. She must allege a specific disability. Second, she has not identified a similarly situated individual that may be used to infer animus. Third, her amended complaint does not allege a single action that Defendants took on account of her disability. All the factual allegations in the amended complaint are focused on actions that Defendants took in retaliation for her speech and advocacy.

However, she has adequately pled a "class-of-one" equal protection claim against Arview and Snell. To state a class-of-one claim, an individual must allege that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Swanson v. City of Chetek*, 719 F.3d 780, 783–84 (7th Cir. 2013) (quoting *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "The classic class-of-one

claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Id.* at 784 (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). Generally, "courts look to the treatment of similarly situated individuals" to determine whether "there was no proper motivation for the disparate treatment." *Id.* But "[i]f animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual." *Id.* "[A]n 'orchestrated campaign of official harassment directed against [the plaintiff] out of sheer malice,' 'vindictiveness,' or 'malignant animosity' would state a claim for relief under the Equal Protection Clause." *Fenje v. Feld*, 398 F.3d 620, 628 (7th Cir. 2005) (quoting *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995)). Here, Plaintiff has alleged that two government officials—Arview and Snell—have engaged in a campaign of harassment against her. She alleges that their actions were taken after she made public complaints about the City and its officials and were taken to silence her and protect a local landlord. In other words, she "has identified [her] specific harasser[s], provided a plausible motive and detailed a series of alleged actions by [Arview and Snell] that appear illegitimate on their face." *See Swanson*, 719 F.3d at 785. That is sufficient to state a class-of-one equal protection claim against Arview and Snell. Therefore, the Court will allow this claim to proceed.

### iv.   Count 6 – Civil Conspiracy:

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.'" *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). "To state a claim under § 1983 for civil conspiracy, a plaintiff must allege facts from which the

11

Court may reasonably infer there was '(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'" *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 880 (N.D. Ill. 2019) (quoting *Scherer*, 840 F.2d at 441). "Section 1983 does not . . . punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982).

Plaintiff has stated a claim for civil conspiracy. First, she has adequately pled claims under the First Amendment and the Equal Protection Clause. Therefore, she has alleged the denial of a civil right. Second, she has pled a pattern of harassment by city officials and private actors over a period of months. Specifically, she claims that: (1) Arview filed a false police report and falsified order of protection against her; (2) Snell threatened to demolish her home, refused to address the dangerous property owned by Stanley and occupied by Lauren Hawkins ("Hawkins"), and indicated that he would find a way to give her property to Stanley so that his property could come into compliance with the building and zoning codes; (3) Stanley threatened her directly and said that he would use his property and its inhabitants to cause her harm; and (4) Hawkins chemically assaulted her and made a public threat against her. In addition, she has alleged that these acts were taken with a shared purpose: to silence her and allow Stanley to continue to violate the building and zoning codes. It is difficult for the Court to "imagine a scenario in which that harassment would not have been the product of a conspiracy." *Geinosky*, 675 F.3d at 749. The Court will not dismiss this claim because of Plaintiff's "failure to recite language explicitly linking these factual details to their obvious suggestion of collusion." *Id.* Since Plaintiff has plausibly alleged a claim for civil conspiracy against Arview and Snell, the

Court will allow this claim to proceed.

    B.  <u>Other Federal Claims:</u>

        i.  Counts 2 and 3 – Title II of the American with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act:

The ADA and the Rehabilitation Act "generally prohibit discriminating based on disability in public programs." *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 781 (N.D. Ill. 2004). Title II of the ADA prohibits a public entity from discriminating based on disability; Section 504 of the Rehabilitation Act applies that same prohibition to federally funded programs and activities. *Id.* To state a claim under the ADA, a plaintiff must allege that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by a public entity; and (3) the denial or discrimination was because of her disability. *Id.* at 782. Section 504 of the Rehabilitation Act requires the plaintiff to plead an additional requirement: the defendant is an entity that receives federal funds. "The ADA and Rehabilitation Act don't apply absent a disability." *Id.* Disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

The Court finds that Plaintiff fails to state a claim under the ADA and the Rehabilitation Act. It reaches this conclusion for two reasons. First, Plaintiff fails to allege a specific disability. A plaintiff alleging discrimination based on disability must allege exactly what makes her disabled. *See Tate v, SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015); *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019). The amended complaint contains only a conclusory allegation that Plaintiff is disabled. It gives the Court no

indication of what medical condition Plaintiff suffers from and whether that condition meets the definition of disability. In addition, it does not give Defendants fair notice. *See Tate*, 809 F.3d at 346. Second, Plaintiff does not allege a single action that Defendants took on account of her disability. All the factual allegations in the amended complaint are focused on actions that Defendants took in retaliation for her speech and advocacy. Because Plaintiff fails to state a claim under the ADA and Rehabilitation Act, the Court will dismiss both claims without prejudice.

<u>State Law Claims:</u>

ii. Count 7 – Intentional Infliction of Emotional Distress:

A claim for intentional infliction of emotional distress has three elements: (1) the conduct involved was "truly extreme and outrageous," (2) the defendant either intended to inflict, or knew there was a high probability he would cause, severe emotional distress, and (3) the defendant actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). To support an intentional infliction of emotional distress claim, the conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001); *Campbell v. A.C. Equip. Servs. Corp.*, 610 N.E.2d 745, 749 (Ill. App. Ct. 1993).

To determine whether conduct is extreme and outrageous, courts consider three factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme;" (2) "whether the defendant reasonably believed its objective was legitimate;" and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.'" *Franciski v.*

14

*Univ. of Chicago Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 533

N.E.2d 806, 809–11 (Ill. 1988)). "Recovery under this theory does not extend to conduct

involving mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

*Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991). "Nor does it

even extend to conduct 'characterized by "malice" or a degree of aggravation which would

entitle the plaintiff to punitive damages for another tort.'" *Id.* (quoting *Pub. Fin. Corp. v. Davis*,

360 N.E.2d 765, 767 (Ill. 1976)).

The Court finds that Plaintiff fails to state a claim for intentional infliction of emotional

distress. Her amended complaint contains only a conclusory allegation that she suffered severe

emotional distress.[1] That is not sufficient to plausibly state a claim. *See Caparelli-Ruff v. Bd. of*

*Educ. of E. Aurora Sch. Dist. 131*, 695 F. Supp. 3d 983, 996–97 (N.D. Ill. 2023) (finding that

conclusory allegation that the plaintiff suffered severe emotional distress is not sufficient to state

a claim); *McIntosh v. Kelly*, No. 16-CV-01018-SMY, 2017 WL 633810, at *7 (S.D. Ill. Feb. 16,

2017) (same). As such, the Court will dismiss this claim without prejudice.

### iii.   Count 8 – Malicious Exploitation of Disabled Adult:

Plaintiff alleges that Defendants exploited her vulnerability as a disabled adult for

malicious purposes in violation of the Illinois Adult Protective Services Act, 320 ILCS 20/1, *et*

*seq.* The Act tasks the Department of Aging of the State of Illinois ("the Department") with the

responsibility to provide services to people with disabilities aged 15 through 59 and adults aged

---

[1] In her response brief, Plaintiff alleges that she suffered a verifiable psychiatric breakdown, including: (1) PTSD exacerbation, (2) chronic stress-induced vomiting and insomnia, and (3) blood pressure elevation. However, "a Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing." *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). As such, the Court has not considered these facts in its decision.

15

60 or older who reside in domestic living situations and have been abused, neglected, or

financially exploited. *See* 320 ILCS 20/3(a); *King v. Senior Servs. Assocs., Inc.*, 792 N.E.2d 412,

416 (Ill. App. Ct. 2003). It gives the Department the overall responsibility for the design and

management of the program. *See* 320 ILCS 20/3(a)*; King*, 792 N.E.2d at 416. However, it is up

to the provider agencies with which the Department contracts to implement the program and

provide services to the people who have been abused, neglected, or exploited. *See* 320 ILCS

20/3(c); *King*, 792 N.E.2d at 417. "Chief among these services is the investigation and possible

referral for prosecution of reports of abuse, neglect, and exploitation." *King*, 792 N.E.2d at 417.

The Act does not expressly provide a remedy to abused, neglected, or exploited

individuals with disabilities. Accordingly, Plaintiff may only bring this cause of action if such an

action can be implied from the language of the statute. *See id.* at 416. "An implied right of action

may be found where: (1) the plaintiff is a member of the class for whose benefit the statute was

enacted; (2) the plaintiff's injury is one that the statute was designed to prevent; (3) a private

right of action is consistent with the underlying purpose of the statute; and (4) implying a private

right of action is necessary to provide an adequate remedy for violations of the statute." *Id.* "In

interpreting a legislative enactment, a court must read the statute as a whole and not as isolated

provisions." *Id.*

Defendant argues that there is no implied private right of action under the statute for the

malicious exploitation of a disabled adult. However, the Court declines to reach this question

because it finds that, even if there is a private right of action, Plaintiff fails to state a claim. Her

conclusory allegation that she is disabled is not sufficient. She must allege a specific disability.

In addition, she fails to make any specific factual allegations to plausibly suggest that she is a

16

victim of abuse, neglect, or financial exploitation as defined by the Act.[2] Because Plaintiff fails to state a claim for malicious exploitation of a disabled adult, the Court will dismiss this claim without prejudice.

> iv.  Count 9 – Abuse of Process:

To plead a cause of action for abuse of process, a plaintiff must allege two elements: "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). The first element requires a plaintiff to "plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment." *Id.* "In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process." *Id.* The elements "are strictly construed, as the tort "is not favored under Illinois law." *Id.*

Plaintiff alleges that Defendants committed abuse of process by misusing police and court processes, including filing false police reports and a fraudulent order of protection, to harass and intimidate her. These allegations are not sufficient to state a claim. Her claims against the City and Snell can be resolved easily. Both actions that Plaintiff believes constitute abuse of process—filing false police reports and a fraudulent order of protection—were committed by Arview. In other words, she has not made any specific allegations tying either the City or Snell to the claim.

As for her claim against Arview, neither the filing of a false police report nor the filing of

---

[2] Plaintiff's response brief argues that this claim is based on a negligence per se theory. However, because the Court finds that she has not adequately alleged a violation of the Act, she fails to plausibly state a claim for negligence.

17

a fraudulent order of protection can constitute abuse of process. Plaintiff has alleged that the police report and order of protection were filed for an improper motive. However, Illinois courts have repeatedly held that "[t]he mere institution of proceedings, even with a malicious motive, does not in and of itself constitute abuse of process." *Landau v. Schneider*, 506 N.E.2d 735, 737 (Ill. App. Ct. 1987). This is because "the institution of an action is not a process of the court." *Cmty. Nat. Bank in Monmouth v. McCrery*, 509 N.E.2d 122, 124 (Ill. App. Ct. 1987). "Rather, an action is instituted upon the filing of a pleading or complaint by a party." *Id.* "'Process' is any means by which the court acquires jurisdiction over a defendant, including, quite obviously, the issuance of summons, the most common means." *Selby v. O'Dea*, 156 N.E.3d 1212, 1227 (Ill. App. Ct. 2020). Here, Plaintiff has made no allegation that Arview used a summons or other process by the court in an abusive manner. The fact that he may have had an ulterior purpose or bad motive in filing the police report and order of protection cannot be construed as having any relation to a process of the court. Therefore, the Court will dismiss this claim without prejudice.

v.   Count 10 – Public Nuisance:

Public nuisance is defined as "the doing of or the failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the public." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1113 (Ill. 2004). To state a claim for public nuisance, a plaintiff must allege: "(1) the existence of a public right; (2) a substantial and unreasonable interference with that right by the defendant; (3) proximate cause; and (4) injury." *City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126, 131 (Ill. App. Ct. 2005). Control is not a separate element that must be pleaded in nuisance cases, but it is a relevant factor in the proximate cause inquiry. *Beretta U.S.A. Corp.*,

18

821 N.E.2d at 1132. "When the nuisance results from a condition or conduct upon land, control over the land is generally a necessary prerequisite to the imposition of liability." *Id.*

The Court concludes that Plaintiff fails to state a claim for public nuisance. It reaches this conclusion for two reasons. First, Plaintiff has not alleged that any of the actions taken by the individual defendants caused her injuries. Second, the alleged nuisance properties are not owned by any of the individual defendants; they are owned by Stanley and Trone. As such, none of the defendants had control over the land. In her response brief, Plaintiff argues that Illinois municipalities possess a statutory duty under 65 ILCS 5/11-31-1 to remove dangerous structures, which creates legal "control" over the nuisance properties. She also cites two cases that she claims stand for the proposition that, when government entities hold exclusive demolition authority, they control nuisance continuation through action and inaction. The Court rejects these arguments. Contrary to Plaintiff's contention, 65 ILCS 5/11-31-1 does not impose a duty on the City to demolish a dangerous property. Instead, it gives the City discretion. In addition, neither of the cases cited by Plaintiff state or even imply that exclusive demolition authority equals control.[3] The Court will dismiss this claim without prejudice.

vi.   Count 16 – Violation of Illinois Hate Crime Act:

"A person commits a hate crime when, by reason of the actual or perceived . . . physical or mental disability . . . of another individual or group of individuals, regardless of the existence

---

[3] The Court believes that Plaintiff may be using generative AI platforms, such as ChatGPT, to draft her filings. Plaintiff should be cautious when using these platforms. They are known to create fictitious citations and to misrepresent case holdings. Federal Rule of Civil Procedure 11 imposes a duty on *pro se* plaintiffs to ensure that all legal contentions are supported by existing law or a nonfrivolous argument for extending the law. Even if Plaintiff uses AI to draft her filings, she remains responsible for ensuring that they are accurate and do not include fabricated caselaw, citations, or quotations. The Court warns Plaintiff that failure to comply with Rule 11's obligations may result in appropriate sanctions.

of any other motivating factor or factors, he or she commits . . . intimidation . . . ." 720 ILCS

5/12-7.1(a). Intimidation occurs when a person, "with intent to cause another to perform or to

omit the performance of any act, . . . communicates to another, directly or indirectly . . . a threat

to perform without lawful authority any" of seven listed acts. 720 ILCS 5/12-6(a). Acts that

constitute intimidation include threats to: "[i]inflict physical harm on the person threatened or

any other person or on property," "[e]xpose any person to hatred, contempt or ridicule," and

"[t]ake action as a public official against anyone or anything, or withhold official action, or cause

such action or withholding." *Id*. If a person suffers intimidation as the result of a hate crime, they

may bring a civil action for damages and injunctive relief. 720 ILCS 5/12-7.1(c).

Plaintiff alleges six acts that she believes amount to intimidation: (1) threats to demolish

her home; (2) filing a false police report; (3) filing a fraudulent order of protection; (4) selective

code enforcement; (5) neglect by police to protect her from violence; and (6) coordinated public

targeting at city council meetings and in online forums. She alleges that these actions were

motivated by her actual or perceived disability. The Court finds that Plaintiff fails to state a claim

under the Illinois Hate Crime Act. The factual allegations in the amended complaint make it

clear that all these actions were taken in retaliation for Plaintiff's speech and advocacy. There is

no factual content to support her claim that these acts were motivated by her actual or perceived

disability. Accordingly, the Court will dismiss this claim without prejudice.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants

City of West Frankfort, Timothy Arview, and Thad Snell's Motion to Dismiss (Doc. 29). Counts

1, 5, and 6 are DISMISSED without prejudice with respect to Plaintiff's claims against the City.

These counts will proceed against Arview and Snell. Counts 2, 3, 4, 7, 8, 9, 10, and 16 are DISMISSED without prejudice in their entirety. Plaintiff shall have up to and including April 9, 2026, to file a second amended complaint. If a second amended complaint is filed, it will be screened pursuant to 28 U.S.C. § 1915(e)(2).

**IT IS SO ORDERED.**
**DATED**: **March 10, 2026**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**
