UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TINA ROSE,

        Plaintiff,

    v.

CITY OF WEST FRANKFORT,
TIMOTHY C. ARVIEW, and
THAD SNELL,

        Defendants.

Case No. 25-cv-00845-JPG

## MEMORANDUM AND ORDER

This case is before the Court on Defendants City of West Frankfort ("the City"), Timothy Arview ("Arview"), and Thad Snell ("Snell")'s Motion to Stay, or in the Alternative, Motion to Dismiss (Doc. 104) and Plaintiff Tina Rose's Motion for Leave to File Supplemental Complaint (Doc. 93).

## I.    BACKGROUND

The Court has already given both a detailed recitation and a short summary of the facts (Docs. 54, 75). It will not repeat them here.

Plaintiff filed her third amended complaint on April 17, 2026. It was screened pursuant to 28 U.S.C. § 1915(e)(2). Nine claims survived screening and are currently pending before the Court: (1) a claim under 42 U.S.C. § 1983 for First Amendment retaliation; (2) a claim under Title II of the American with Disabilities Act for failure to accommodate; (3) a claim under Title II of the American with Disabilities Act for retaliation; (4) a claim under § 504 of the Rehabilitation Act for failure to accommodate; (5) a claim under 42 U.S.C. § 1983 for violation of Fourteenth Amendment procedural due process rights; (6) a claim under 42 U.S.C. § 1983 for violation of Fourteenth Amendment equal protection rights; (7) a claim under 42 U.S.C. § 1983

for civil conspiracy; (8) a claim under 42 U.S.C. § 1983 for municipal liability; and (9) a claim for intentional infliction of emotional distress. Counts 2, 3, 4, and 8 are against the City only. The remaining five claims are against Arview and Snell only.

## II.    ANALYSIS

A.  Motion to Stay, or in the Alternative, to Dismiss:

Defendants ask this Court to either abstain from exercising jurisdiction under the *Colorado River* doctrine or, alternatively, dismiss Counts 2, 3, 4, 5, 8 and 9 of Plaintiff's third amended complaint for failure to state a claim. Plaintiff filed a response (Doc. 106).

i.  *Motion to Stay:*

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction given to them." *City of Fishers v. DIRECTV*, 5 F.4th 750, 752 (7th Cir. 2021) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Due to this obligation, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Nevertheless, the Supreme Court has identified several situations where abstention would be proper. *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021). Defendants have cited one of these prior applications: *Colorado River* abstention.

To determine whether abstention under the *Colorado River* doctrine is appropriate, the Court must conduct a two-part analysis. *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). First, it must decide whether the concurrent state and federal actions are parallel. *Id.* If there is doubt about whether actions are parallel, the Court should not abstain under *Colorado River. Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011). But if the actions are parallel, the Court must determine if "exceptional circumstances" exist to justify *Colorado River*

abstention. *Tyrer*, 456 F.3d at 751.

In this case, there is one relevant state court action, *Tina Rose v. Andrea Bolen*, Franklin County Case No. 2025-LA-20 ("*Rose v. Bolen*"), and two relevant administrative proceedings, *Tina Rose v. Thad Snell*, IDHR Charge No. 2025CP3233 ("*Rose v. Snell*") and *Tina Rose v. City of West Frankfort*, IDHR Charge No. 2025CP0703 ("*Rose v. City*").

The Court questions whether any of these actions are parallel to this case. *Rose v. Bolen* was dismissed with prejudice by the Franklin County Circuit Court on June 12, 2026. It is not clear that *Rose v. Snell* and *Rose v. City*, as administrative proceedings, are even covered by the *Colorado River* doctrine. Regardless, even assuming that all three actions are parallel, no exceptional circumstances warrant abstention. This case was filed before the state court and administrative proceedings and has made substantial progress. Plaintiff has filed a third amended complaint, some of her claims have survived dismissal, the parties are actively engaged in discovery, and the Court has already devoted substantial time and judicial resources to this case. Accordingly, the Court declines to abstain under the *Colorado River* doctrine.

      *ii.  Motion to Dismiss:*

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to

relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

**1.  Counts 2, 3 and 4 – Title II of the American with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act:**

The ADA and the Rehabilitation Act "generally prohibit discriminating based on disability in public programs." *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 781 (N.D. Ill. 2004). Title II of the ADA prohibits a public entity from discriminating based on disability; Section 504 of the Rehabilitation Act applies that same prohibition to federally funded programs and activities. *Id.* The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Plaintiff brings two claims under the ADA: (1) failure to accommodate; and (2) retaliation. She also brings a failure to accommodate claim under the Rehabilitation Act.

a.  Failure to Accommodate:

To state a failure to accommodate claim under the ADA, a plaintiff must allege that: (1)

4

she is a qualified person; (2) she has a disability; and (3) the defendant denied her access to a

program or activity by failing to provide a reasonable accommodation for her disability. *See*

*Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). The Rehabilitation Act

requires the plaintiff to plead an additional requirement: the defendant is an entity that receives

federal funds.

Plaintiff fails to state a claim for failure to accommodate. She alleges that she is a

qualified individual with a disability, and that she was denied access to public services, including

the zoning process. However, she does not plausibly allege that any of the accommodations she

requested from the City—emailed notices or agendas, communications-related accommodations,

and access to a neutral ADA coordinator—were necessary to afford her meaningful access to the

zoning process.

First, she does not explain how any of her disabilities prevented her from reviewing the

zoning board agenda in person, nor does she allege that receiving the zoning board agenda by

email was necessary to afford meaningful access to the zoning process. The interaction that

occurred after Plaintiff went to City Hall to obtain the agenda may give rise to another claim, but

it does not show that any reasonable accommodation was necessary for access to public services.

Second, she does not allege that she ever requested any accommodation related to

communication, or that the City denied such a request. Instead, she alleges only that city officials

corrected her speech and pronunciation in public. These corrections may have been embarrassing

or upsetting to Plaintiff, but she does not plausibly allege that they denied her access to public

services because of her disability.

Finally, she does not explain how access to a neutral ADA coordinator was necessary for

meaningful access to the zoning process. To the extent Plaintiff believes an ADA coordinator could have scheduled her zoning board hearing, that is not the role of an ADA coordinator.

Since Plaintiff has not plausibly alleged she was denied meaningful access to the zoning process due to the City's failure to provide reasonable accommodation, the Court will dismiss Counts 2 and 4 of the third amended complaint without prejudice.

b.   Retaliation:

To state a claim for retaliation under the ADA, a plaintiff must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal connection existed between the two. *See Edwards v. Illinois Dep't of Fin.*, 210 F. Supp. 3d 931, 953 (N.D. Ill. 2016). A plaintiff engages in a statutorily protected activity by seeking accommodation or by raising a claim of discrimination based on her disability. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015). An action is adverse if it would "dissuade a reasonable person from engaging in protected activity." *Henry v. Milwaukee Cnty.*, 539 F.3d 573, 586 (7th Cir. 2008).

Plaintiff has stated a claim for retaliation. First, she alleges that she engaged in a statutorily protected activity by seeking accommodation. She claims that she requested an emailed copy of the zoning board agenda as an accommodation for her disability. Second, she alleges that she suffered adverse action. The same day the City refused to provide her with an emailed agenda, Plaintiff appeared at City Hall to review the agenda in person. She alleges that, upon her arrival, Arview threatened her home and physically menaced her, and the City Clerk called the police and reported that Plaintiff was terrorizing Arview. She claims that, four days later, she attempted to speak at a zoning board meeting. Arview interrupted her by loudly stating,

"You are not a whistleblower," multiple times. She alleges that two days after that, Arview filed a petition for an order of protection against her based on false or misleading statements. Third, she has pleaded a specific timeline from which the Court can plausibly infer that her statutorily protected activity caused the adverse action. Since Plaintiff has plausibly alleged a claim for retaliation, the Court will allow this claim to proceed.

### 2. Count 5 – Fourteenth Amendment Procedural Due Process:

To state a § 1983 claim against an individual, a plaintiff must allege that the defendant deprived her of rights secured by the Constitution or laws of the United States and was acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006). "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation. The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal citation and quotations marks omitted).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. § 1. This clause encompasses three types of protection. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The one that is relevant here is the "guarantee of fair procedure." *Id.* "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)). To have a constitutionally protected property interest, "an individual must have a 'legitimate claim of entitlement to it.'" *Kim Const. Co. v. Bd. of Trs. of Vill. of*

*Mundelein*, 14 F.3d 1243, 1245 (7th Cir. 1994) (quoting *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "A property interest for purposes of the Due Process Clause is created by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* (quoting *Roth*, 408 U.S. at 577).

Plaintiff fails to state a claim for deprivation of procedural due process. Her interest in the use, enjoyment, and exclusive possession of her real property was not deprived by Arview and Snell; it was deprived by Robert Stanley. To the extent she alleges an interest in the enforcement of the building and zoning codes, that is not a cognizable property interest. The Local Governmental and Governmental Employees Tort Immunity Act makes public employees, like Arview and Snell, immune from liability for injuries caused by any failure to enforce the law. *See* 745 ILCS 10/2-202. Accordingly, Plaintiff, as a private citizen, has no protected property interest in the enforcement of city ordinances.

Plaintiff has not plausibly alleged that she was deprived of a cognizable property interest without due process of law. Thus, the Court will dismiss Count 5 with prejudice.

### 3.   Count 8 – Monell Liability:

A municipality may not be held vicariously liable for the actions of its employees under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). It may be liable, however, for its own actions as a municipality. *Id.* at 690–92. A municipal action occurs where (1) the municipality had an express policy calling for a constitutional violation, (2) the municipality had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the

8

force of law, or (3) if a person with final policymaking authority for the municipality caused the constitutional violation. *Id.* at 694. And the policy, custom, or decision must be the moving force behind the constitutional violation. *Id.*

Plaintiff has stated a *Monell* claim based on a ratification theory. A municipality may be liable under § 1983 where a final policymaker ratifies the unconstitutional conduct by either approving the decision and the basis for it, *see Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994), or acting with deliberate or reckless indifference to the plaintiff's complaints, *see Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993). Here, Plaintiff alleges she made numerous complaints to the City Council asserting that Arview and Snell were violating her constitutional rights by enforcing the building and zoning codes in an unequal manner and retaliating against her for protected speech and advocacy. She further alleges that, despite these warnings, the City Council failed to take corrective action. These allegations, taken as true and construed in the light most favorable to Plaintiff, are sufficient to plausibly allege that the City Council acted with deliberate or reckless indifference to her complaints. Therefore, the Court will allow this claim to proceed.

### 4.  Count 9 – Intentional Infliction of Emotional Distress:

A claim for intentional infliction of emotional distress has three elements: (1) the conduct involved was "truly extreme and outrageous," (2) the defendant either intended to inflict, or knew there was a high probability he would cause, severe emotional distress, and (3) the defendant actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). To support an intentional infliction of emotional distress claim, the conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*

*v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001); *Campbell v. A.C. Equip. Servs. Corp.*, 610 N.E.2d 745, 749 (Ill. App. Ct. 1993).

To determine whether conduct is extreme and outrageous, courts consider three factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme;" (2) "whether the defendant reasonably believed its objective was legitimate;" and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.'" *Franciski v. Univ. of Chicago Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809–11 (Ill. 1988)). "Recovery under this theory does not extend to conduct involving mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991). "Nor does it even extend to conduct 'characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Id.* (quoting *Pub. Fin. Corp. v. Davi*s, 360 N.E.2d 765, 767 (Ill. 1976)).

Plaintiff has stated a claim for intentional infliction of emotional distress against Arview. First, she alleges that he engaged in extreme and outrageous conduct. She claims that he physically menaced her at City Hall and threatened to find a way to take her home. In addition, she alleges that there are at least two factors present that make this conduct extreme and outrageous: (1) Arview is the mayor of the City and has power over her; and (2) Arview knew that she was disabled and particularly susceptible to emotional distress. Second, she alleges that Arview knew there was a high probability that his actions would cause her severe emotional distress, particularly given his knowledge that she was disabled and vulnerable. Third, she

10

alleges that she suffered severe emotional distress, including exacerbation of PTSD symptoms,

insomnia, stress-related vomiting, and elevated blood pressure.

This claim is not preempted by the Illinois Human Rights Act ("IHRA").[1] "The IHRA

gives the Illinois Human Rights Commission ("IHRC") exclusive jurisdiction over civil rights

violations." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006). The Illinois

Supreme Court has held that, where a tort claim is "inextricably linked" to a civil rights violation

so there is "no independent basis for imposing liability," the IHRA precludes the courts from

exercising jurisdiction over the tort claim. *See Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill.

1997). In general, "discrimination and intentional infliction of emotional distress are different

wrongs." *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003). Accordingly, an

intentional infliction of emotional distress claim that does "not depend on a civil rights violation"

is not preempted by the IHRA. *Naeem*, 444 F.3d at 604. Plaintiff's claim for intentional infliction

of emotional distress is based on her allegations that Arview physically menaced her at City Hall

and threatened to find a way to take her home. These allegations are sufficient to state a claim for

intentional infliction of emotional distress, regardless of whether these actions were motivated by

Plaintiff's disability.

However, her claim for intentional infliction of emotional distress against Snell is barred

by the doctrine of collateral estoppel. This claim is based on Plaintiff's allegation that Snell

threatened to demolish her home. This same allegation was considered in a prior lawsuit—*Tina

Rose v. West Frankfort and Thad Snell*, Franklin County Case No. 2024-LA-47 ("*Rose v. City

---

[1] This is not a finding of fact or a final holding. At this stage, the Court must accept Plaintiff's factual allegations as true and construe them in the light most favorable to Plaintiff. In addition, because IHRA preemption is a question of subject-matter jurisdiction, Defendants remain free to raise the issue again after the factual record has been developed.

*and Snell*"). To determine preclusive effect of *Rose v. City and Snell*, the Court looks to Illinois law. *Sapp v. Foxx*, 106 F.4th 660, 665 (7th Cir. 2024). In Illinois, collateral estoppel applies if three elements are met: "(1) the issue decided in the prior proceeding must be identical to the one in the current suit; (2) the prior adjudication must have been a final judgment on the merits; and (3) the party against whom the estoppel is asserted must have been a party to, or must be in privity with a party to, the prior adjudication." *Id.* All three elements are met here. Plaintiff was a party to *Rose v. City and Snell*. That case resulted in a final judgment on the merits, determining, in relevant part, that Snell was immune from liability for intentional infliction of emotional distress based on his alleged threat to demolish Plaintiff's home. As such, collateral estoppel precludes Plaintiff from relitigating the issue in this case.

The Court finds that Plaintiff has plausibly alleged a claim for intentional infliction of emotional distress against Arview, but her claim against Snell is barred by the doctrine of collateral estoppel. As such, it will allow Count 9 to proceed against Arview but will dismiss it with prejudice against Snell.

B.  <u>Motion for Leave to File Supplemental Complaint (Doc. 93):</u>

Plaintiff asks the Court for leave to file a supplemental complaint setting out events that occurred after she filed this action. Defendants filed a response (Doc. 97), and Plaintiff filed a reply (Doc. 98).

Federal Rule of Civil Procedure 15(d) provides that: "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "A party does not have an absolute right to file a supplemental pleading."

12

*Chalmers v. Rector*, No. 15-CV-044-MJR, 2015 WL 5675799, at *2 (S.D. Ill. Sept. 28, 2015). "Rather, 'the district court has substantial discretion either to permit or to deny such a motion.'" *Id.* (quoting *Chicago Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011)).

Plaintiff filed this case on May 2, 2025. She now seeks to file a supplemental complaint detailing events that occurred as recently as March 27, 2026. The allegations in her proposed supplemental complaint focus on the alleged continuation of the same conduct underlying her initial claims. Based on her most recent filings and the statements she made to the Court during a July 6, 2026, motion hearing, Plaintiff believes this conduct is still occurring.

The Court declines to allow Plaintiff to file a supplemental complaint for three reasons. First, her proposed supplemental complaint would greatly expand this litigation. It adds nearly a year of events to this case and expands the operative pleading by 17 pages and 81 paragraphs. Second, many of the allegations in her proposed supplemental complaint are conclusory, while others cannot form the basis for her claims. For example, her proposed supplemental complaint contains 5 pages of allegations that Arview and Snell made false or misleading statements to the Illinois Department of Human Rights. This is litigation conduct, which generally does not give rise to actionable retaliation. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) ("[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by these statutes."). She also attempts to hold Arview and Snell responsible for the conduct of other individuals, including Johnathan Cantrell, Robert Stanley, and Jonathan Stanley. However, with respect to Plaintiff's § 1983 claims, they can only be held liable for their own wrongdoing. *See Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985); *Sanville v.*

13

*McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Third, this litigation needs to proceed to resolution. At some point, the scope of this case must be fixed for the parties to complete discovery, prepare dispositive motions, and if necessary, proceed to trial. The Court believes the appropriate temporal endpoint is the filing date of May 2, 2025. If Plaintiff wishes to pursue claims based on events occurring after that date, she may do so by filing a separate action.

## II.      CONCLUSION

For the foregoing reason, the Court:

- **GRANTS in part and DENIES in part** Defendants' Motion to Stay, or in the Alternative, to Dismiss (Doc. 104);

    o  It is **GRANTED** to the extent it seeks dismissal of Counts 2, 4, and 5 in their entirety and Count 9 against Snell;

        ▪  Counts 2 and 4 are **DISMISSED without prejudice** in their entirety;

        ▪  Count 5 is **DISMISSED with prejudice** in its entirety;

        ▪  Count 9 is **DISMISSED with prejudice** as to Snell;

    o  It is **DENIED** in all other respects;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case;

- **DENIES** Plaintiff's Motion for Leave to File Supplemental Complaint (Doc. 93); and

- **ORDERS** that no further amendments will be permitted absent compliance with Federal Rule of Civil Procedure 15 and a showing of good cause.

**IT IS SO ORDERED.**
**DATED**: July 31, 2026

_____
**J. PHIL GILBERT**
**United States District Judge**

14